UNITED STATES of America, Appellee,

v.

Alex ORTIZ, Appellant.

No. 1179, Docket 84–1040.

United States Court of Appeals, Second Circuit.

Argued May 11, 1984.

Decided Aug. 17, 1984.

Certiorari Denied Dec. 3, 1984. See 105 S.Ct. 573.

Sylvia Peck, New York City (The Legal Aid Society Federal Defender Services Unit, New York City, of counsel), for appellant.

Aaron R. Marcu, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Paul L. Shechtman, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before OAKES, VAN GRAAFEILAND, Circuit Judges, and BONSAL, District Judge.[*]

OAKES, Circuit Judge:

Alex Ortiz appeals from his sentence of ten years' imprisonment and ten years of special parole after pleading guilty to dis-

---

[*] Hon. Dudley B. Bonsal, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

tribution of heroin and possession of heroin with intent to distribute, 21 U.S.C. § 841(a) (1982), before the United States District Court for the Southern District of New York, Thomas P. Griesa, Judge. Ortiz, an eighteen-year-old addict and "street" pusher, argues that the imposition of this sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment, because it is disproportionate to the crime under the standard announced in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The Government responds directly to the disproportionality argument, but fails to provide us with much supporting sentencing data. Instead, it includes in its brief a copy of its Brandeis-brief-like[1] presentence memorandum for Ortiz, which cites Sunday newspaper magazine articles and outlines the rationale for the Government's current enforcement policies: there is a large distribution system of brand-name heroin and cocaine on the Lower East Side of New York City; the drug dealing has had a horrendous and cancerous effect on the community; and thus there is a need for a "vigorous Federal response to drug dealing on the Lower East Side." While we do not take judicial notice of these "facts," *see* Fed.R.Evid. 201, which might be relevant to the exercise of discretion to prosecute but have little or no bearing on whether the sentence violates the Eighth Amendment, we do affirm on the basis of our own analysis of proportionality.

Ortiz, an addict and himself a victim as well as a perpetrator of the narcotics traffic, pleaded guilty to selling an undercover agent six glassine envelopes of heroin in a "street sale." The price was $60. Ortiz sold six "bags" of a brand of heroin called "Express Only," which he had obtained from a nearby supplier, to one agent, and he told another agent that, while there was some "Night Train"—another brand name—in the area, "Express Only"[2] was

---

1. See R. Stern, *Appellate Practice in the United States* 319–20 (1981).

2. According to the Government's brief, "heroin sold on the Lower East Side is distributed under

the better product. He allegedly sold four "bags" to the second officer for $40. While he was indicted for the latter sale, the charge was dismissed as part of his guilty plea.

Ortiz's criminal record reflects how a metropolitan criminal justice system works.[3] He had been arrested in September, 1981, for possession of forty glassine envelopes of heroin, but for reasons that do not appear in this record the case was dismissed. He also was arrested in November, 1983—after his arrest and indictment and some two weeks before his plea of guilty in the instant case—but he pleaded guilty only to loitering. The charges of possession and use of heroin were dismissed. His sentence was a conditional discharge.

In sentencing Ortiz, Judge Griesa declined, in light of Ortiz's record of drug dealing, to apply the Youth Corrections Act, 18 U.S.C. § 5010(b), (c) (1982), an action that Ortiz has not challenged. It is plain that at sentencing the Government sought to make Ortiz an example in its "crackdown" on the Lower East Side drug

traffic, again a matter of discretion not before us.

We address only whether Ortiz's sentence is so disproportionate that it violates the Eighth Amendment prohibition against cruel and unusual punishment. In *Solem v. Helm*, the Supreme Court held that the Eighth Amendment requires that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." 463 U.S. at ——, 103 S.Ct. at 3009. The Court stated that "objective criteria" are to be used to assess proportionality, "including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id.* Nevertheless, according to the Supreme Court, "[i]n view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Id.* at —— n. 16, 103 S.Ct. at 3009 n. 16; *accord Hutto v. Davis*, 454 U.S. 370, 374, 102 S.Ct. 703, 705, 70 L.Ed.2d

brand names such as 'Poison,' 'Black Sunday,' 'Colt .45,' 'Mr. T,' and 'Express Only.' "

**3.** *Date*

| *Date* | *Initial Charge* | *Disposition* |
| --- | --- | --- |
| Dec. 1977 | Robbery | Dismissed |
| Nov. 1979 | Turnstile jumping | Dismissed |
| | Larceny | Dismissed |
| Nov. 1979 | Escape from custody (in connection with previous arrest) | Dismissed |
| Aug. 1980 | Painting graffiti on public transit | 18 months in youth facility |
| Oct. 1980 | Attempted robbery | One year in youth facility |
| Sept. 1981 | Possession of narcotics | Dismissed |
| Dec. 1982 | Possession of a firearm and a knife | Dismissed |
| Nov. 1983 | Possession of narcotics, loitering, use of narcotics | Convicted of loitering on plea of guilty; other charges dismissed; sentence: conditional discharge |

We need not address how a sentencing judge may treat prior dismissals. Ortiz admitted to a two- to three-year history of drug dealing at sentencing. Thus, this court's assessment of defendant as an experienced street peddler is not inappropriate. Were such an assumption based solely on dismissed charges, due process questions might be raised, however, as in the case of "[m]isinformation or misunderstanding that is materially untrue regarding a prior criminal record." *United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir.1970); *accord Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Fatico*, 579 F.2d 707, 712–13 (2d Cir.1978); Note, Procedural Due Process at Judicial Sentencing for Felony, 81 Harv.L.Rev. 821, 845–46 (1968). We note, however, that while a sentencing judge may not be able to consider a prior arrest that led to a dismissal as a conviction, the judge can still consider it as evidence of the defendant's background. *United States v. Cifarelli*, 401 F.2d 512, 514 (2d Cir.), *cert. denied*, 393 U.S. 987, 89

556 (1982); *see also Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980).

Ortiz argues first that the quantity of drugs he sold, his addiction, and the non-violent nature of his actions discount the gravity of the offense. While the *Solem* Court did note the significance of these factors, Ortiz mischaracterizes their application in this case.[4] Although he was not a wholesale dealer, the record suggests that he participated in an extensive and well-supplied narcotics operation. Ortiz was a retailer with what seemed like access to a large inventory. Nor does Ortiz's status as an addict vitiate the gravity of his offense. While an addict—to the tune of five or six "bags" or $50–$60 worth of heroin per day—and hence a victim of the narcotics epidemic, he is also a longtime street peddler, as witnessed by his prior and post-indictment arrest record, *see supra* note 3, and by his "pushing" to the undercover "customers" a brand name heroin. Finally, Ortiz's claims about the nonviolent nature of his actions flies in the face of effects that heroin has on its users; drug dealing cannot be said to be as nonviolent as writing a bad check. *See Solem v. Helm, supra.* Even ignoring the violence typically associated with narcotics operations, *see, e.g., United States v. Wiener,* 534 F.2d 15, 18 (2d Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976), heroin dealing can readily lead to violence, theft, robbery, or the like on the part of a buyer to support his habit.

In conjunction with assessing the gravity of the offense, *Solem v. Helm* requires us to look to the harshness of the penalty. Ortiz's ten-year sentence is five years less than the statutory maximum. 21 U.S.C. § 841(b)(1)(A) (1982). Moreover, Ortiz is statutorily eligible for parole after serving one-third of his term, three and one-third years. 18 U.S.C. § 4205(a) (1982); 28 C.F.R. § 2.2(a) (1983). The parole release guidelines, which require careful attention by the Parole Commission, *Lieberman v. Gunnell,* 726 F.2d 75, 77 (2d Cir.1984) ("Under 18 U.S.C. § 4206(c) (1982), the Commission may not go outside of its own Guidelines unless there is good cause for doing so which it states with particularity."), call for his release after serving eighteen to twenty-four months of his sentence. 28 C.F.R. § 2.20 (1983) (category 3 offense (severity index 901(h)); parole prognosis "fair"). That we are entitled to take parole expectations into account appears undeniable. *Solem v. Helm,* 463 U.S. at ——, 103 S.Ct. at 3013; *Moreno v. Estelle,* 717 F.2d 171, 180 (5th Cir.1983); *Carmona v. Ward,* 576 F.2d 405, 413–14 (2d Cir.1978), *cert. denied,* 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 58 (1979). Comparing the sentence given in the light of parole expectations to the gravity of the offense, we are not by any means persuaded that the sentence was unconstitutionally severe.

As for the second criterion for proportionality—"the sentence imposed on other criminals in the same jurisdiction"—we look to federal sentences for similar crimes, as well as sentences for other crimes. Ortiz tells us that in the Southern District, for the 188 defendants convicted of narcotics offenses (excluding those involving marijuana) in the 12-month period ending June 30, 1982, 20 received prison terms of less than 1 year, 55 (the tables actually show 75) received prison terms of less than 5 years, 19 received split sentences, and 51 (the tables show 55) received terms of probation. Thus, only 39, or 20%, of the defendants received prison sentences of over 5 years.[5] Street-level narcotics trafficking on the Lower East Side be-

---

S.Ct. 465, 21 L.Ed.2d 448 (1968); *United States v. Doyle,* 348 F.2d 715, 721 (2d Cir.1965).

**4.** Ortiz relies in part on a Fifth Circuit panel opinion, which was vacated and reversed by the en banc court of appeals, without noting the en banc holding. *See Terrebonne v. Blackburn,* 624

F.2d 1363 (5th Cir.1980), *vacated,* 646 F.2d 997 (5th Cir.1981) (en banc).

**5.** Administrative Office of United States Courts, *Federal Offenders in United States District Courts 1982,* Table 2, at X–2–8, X–2–9 (1983) [hereinafter cited as *Federal Offenders* ].

tween December 1, 1983, and February 21, 1984, excluding that of Ortiz, has brought the following sentences:

| | |
|---|---|
| Youth Offender Act | 1 |
| Probation | 2 |
| Sentences of one year or less | 3 |
| Sentences of two years | 5 |
| Sentences of three years | 2 |
| Sentences of four years | 3 |
| Sentences of five years | 1 |
| Sentences of six years | 2 |
| Sentences of ten years | 1 [6] |

The Government counters, however, with its examples of "Lower East Side sentences":

[O]ne defendant has received a 15-year sentence, *see United States v. Hernandez*, S 83 Cr. 559 ...; four defendants, including Ortiz, have received 10-year sentences, *see United States v. Lopez*, 83 Cr. 559 ..., *United States v. Zambrana*, S 83 Cr. 717 ..., *United States v. Nunez*, 84 Cr. 76 ...; one defendant has received an eight-year sentence, *United States v. Roberts*, 83 Cr. 632 ...; and three defendants have received six-year terms, *United States v. Ortiz*, 83 Cr. 562 ..., *United States v. Rosario*, 83 Cr. 555 ..., *United States v. Perez*, S 83 Cr. 647.

We find these statistics and counter-statistics rather unhelpful since, irrespective of the locale of the crime, it would seem that similar crimes in the same city committed by individuals with similar records and

backgrounds should be somewhat similarly punished; to isolate the statistics to a particular geographic area within the city permits many errors depending on perceptions. What of the Upper West Side, Harlem, SoHo, Murray Hill? Be that as it may, as far as these statistics go they do not demonstrate disproportionality to the degree required by *Solem v. Helm.*

Although looking to the sentences imposed on persons convicted of other crimes in the same jurisdiction may seem like comparing apples and eggs, it is a required part of sound proportionality analysis. *See Solem v. Helm, supra; Carmona v. Ward,* 576 F.2d at 417, 423 (dissenting opinion). Again, Ortiz would have us look at statistics for the period ending June 30, 1982, in the Southern District of New York, involving defendants convicted of larceny and theft, weapons and firearm offenses and robbery. These statistics show that for those 101 defendants convicted of larceny and theft, none received a sentence of over 5 years; and for those 25 defendants convicted of weapons and firearms offenses, only 3 received a sentence of greater than 5 years. On the other hand, for those 98 defendants convicted of robbery, 52 received a sentence greater than 5 years. We note also that of 209 defendants convicted of fraud, 11 received sentences of over 5 years, and of 7 convicted of forgery or counterfeiting 3 received such sentences.[7] While comparing the seriousness

---

**6.** The Second Circuit Benchmark Guidelines recommend different treatment for addict offenders and non-addict offenders:

*Case #5—Narcotics Selling (21 U.S.C. § 841):*

| | |
|---|---|
| *Offense:* | Defendant, not a narcotics addict, sold 2 ounces of heroin. |
| *Prior Record:* | Significant. *Statutory Maximum:* 15 years. |
| *Benchmark Range of Time to be Served:* | 3–4 years. |
| *Comment:* | The seriousness of the crime and the prior record indicates that a fairly long period of incarceration is needed as a general and specific deterrent. |

*Case #5a—Same as #5, except defendant is an addict:*

| | |
|---|---|
| *Benchmark Range of Time to be Served:* | 2 years of addiction treatment. |
| *Comment:* | The main objective should be the provision of an adequate period of time to try to effect treatment, whether this is done in prison under a commitment, or in the community with residential treatment as a condition of probation. |

Neither example describes a long-time street peddler, however. While Cases # 5 and # 5a refer to defendants with significant prior records, they do not expressly refer to long-time heroin dealers such as Ortiz.

**7.** *Federal Offenders, supra* note 4, Table 2, at X–2–8 to X–2–9.

of these crimes to Ortiz's offense is difficult, the figures with which we have been furnished—and here neither side has been especially helpful—do not evidence unconstitutional disproportionality. It is not unconstitutionally disproportionate to sentence long-time street peddlers of heroin as severely as robbers and forgers.

The third criterion for determining proportionality also indicates that Ortiz's sentence is not disproportionate. When we look to sentences imposed for the commission of the same crime in other federal jurisdictions, we see that Ortiz's sentence, while double the *average* sentence imposed in the United States District Courts for the 12 months ended June 30, 1982 (61.4 months), is consistent with a significant number of federal sentences. Some 1438 of 4586 defendants (31%) received sentences of over 5 years.[8] Although decided before *Solem v. Helm, supra* —the first Supreme Court non-capital case to articulate fully the proportionality rule—numerous cases from other jurisdictions have upheld very stiff sentences for narcotics convictions. *See, e.g., Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (40 years for possession of 9 ounces of marijuana); *Terrebonne v. Blackburn,* 646 F.2d 997 (5th Cir.) (en banc) (life sentence for $175 of heroin), *cert. denied,* 450 U.S. 917 (1981); *Bellavia v. Fogg,* 613 F.2d 369, 371–75 (2d Cir.1979) (15 years to life for acting as driver of automobile that contained cocaine owned by others); *Salazar v. Estelle,* 547 F.2d 1226 (5th Cir.1977) (45 years for small quantity of heroin); *United States v. Fiore,* 467 F.2d 86, 89–90 (2d Cir.1972) (20 years without parole for sale of 40.73 grams of heroin), *cert. denied,* 410

U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181 (1973); *see also Cunningham v. Henderson,* 725 F.2d 32, 36 (2d Cir.1984) ("Our own cases have repeatedly upheld heavy sentences for narcotics violations."). Ortiz suggests that these cases are inapposite because they were decided before *Solem v. Helm.* Putting aside their Eighth Amendment analysis or lack of it, the cases still provide data about how other jurisdictions treat narcotics offenders. And when we look to New York state sentences for similar narcotics offenses, *see Carmona v. Ward, supra* (upholding the constitutionality of maximum life sentence under N.Y.Penal Law § 70.00 for a Class A narcotics felony), the federal sentences seem almost light in comparison, even though the New York law has been amended since *Carmona.* Ortiz could have received a sentence of 25 years under current New York law. N.Y.Penal Law §§ 70.00(2)(b), 220.16(1) (McKinney 1980).[9]

In sum, we are unpersuaded that Ortiz's sentence, at least in view of his prospects for parole, is so disproportionately severe that it violates the Eighth Amendment.

Judgment affirmed.

---

**8.** *Id.* Table H–11a, at H–23.

**9.** We note that the minimum state sentence on a Class B felony is determined with "regard to the nature and circumstances of the crime and to the history and character of the defendant."

N.Y.Penal Law § 70.00(3)(b) (McKinney 1980). We have not been furnished with sentencing data relative to state court treatment of street peddlers.