UNITED STATES of America, Appellee,

v.

Jose Javier
JARAMILLO–MONTOYA, Appellant.

No. 136, Docket 87–1197.

United States Court of Appeals,
Second Circuit.

Argued Sept. 23, 1987.

Decided Dec. 1, 1987.

Judd Burstein, P.C., New York City, for appellant.

Patricia A. Pileggi, Asst. U.S. Atty. (Andrew J. Maloney, U.S. Atty. for the E.D. of N.Y., Emily Berger, Asst. U.S. Atty., of counsel), for appellee.

Before LUMBARD, OAKES, and KEARSE, Circuit Judges.

OAKES, Circuit Judge:

This appeal involves two questions: whether an address book containing the appellant's name was properly admitted either as a coconspirator's statement under Fed.R.Evid. 801(d)(2)(E) or under the residual hearsay exception, Fed.R.Evid. 804(b)(5), and whether a sentence totaling thirty-nine years' imprisonment was so disproportionate as to be cruel and unusual.

Jose Javier Jaramillo–Montoya and eight others were charged with conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and with using a telephone to facilitate the distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 843(b). The codefendants pleaded guilty and received sentences ranging from five years' probation to twelve years' imprisonment. After a one-week trial before Judge Thomas C. Platt, United States District Court for the Eastern District of New York, Jaramillo was convicted of all charges, one count of conspiracy and seven telephone counts. Judge Platt sentenced him to fifteen years' imprisonment on the conspiracy count and four years on each telephone count. Judge Platt suspended one four-year term, substituted a five-year term of probation, and held that the remaining sentences would run consecutively for a total of thirty-nine years' imprisonment. He also ordered Jaramillo to pay a $25,000 fine on the conspiracy count and $30,000 on each telephone count, for a total fine of $235,000.

In the summer of 1985, a person known as "Monina" supplied large quantities of cocaine to Antonio Cuero–Flores, a whole-sale-level narcotics distributor. Telephone calls intercepted at Cuero's residence revealed that when Cuero needed cocaine he would call Monina at beeper number (212) 812–1260 and Monina would then return the call. During the summer of 1985 Cue-

ro and Monina used this method at least sixteen times to discuss in code the price, quality, and distribution of cocaine. Monina returned five of these calls from a mobile telephone in a 1985 Pontiac Grand Prix. Altogether there were thirty-two telephone calls between Cuero's residence and the Grand Prix between June 2 and August 9, 1985.

The only issue at Jaramillo's trial was whether he was "Monina." The Government offered direct and circumstantial evidence that he was. It established several links between Jaramillo and the Grand Prix telephone. Between July 28 and September 8, 1985, forty-eight calls were made from the car to Jaramillo's home and between May 31 and September 6, 1985, twenty-nine calls were made from the car to Picolo Trading, Jaramillo's workplace. Indeed, between July 31 and August 7, 1985, when Jaramillo was in Miami for a baptism, Cuero made no calls to Monina's beeper number, nor were there any calls from the mobile telephone. Significantly, on July 27 Monina had told Cuero that he was leaving "for the baptism of the little girl."

Jaramillo met with Cuero on August 9, 1985, following a telephone call between Monina and Cuero. As Drug Enforcement Administration ("DEA") agents watched, Cuero stopped his Peugeot at the corner of 56th Avenue and Queens Boulevard. Jaramillo was already there in a 1985 blue Pontiac Grand Prix, license number 9220 BAP. Cuero left the Peugeot and walked over to Jaramillo who got out of his car. The two men spoke and then walked to Cuero's car. Cuero's brother, Alberto, got out of the Peugeot, shook hands with Jaramillo, and opened the Peugeot trunk from which Jaramillo removed a package.

On October 16, 1985, Jaramillo was shot while driving William Diaz's car near the corner where he had met the Cuero brothers on August 9, 1985. New York City police officers at the scene removed Jaramillo's attache case from the car and searched it. They found a traffic ticket for a 1984 Pontiac sedan with the same license plate number, 9220 BAP, as the 1985 Grand Prix spotted at the August 9, 1985, meeting. The 1984 car had been traded in as part of the purchase price for the 1985 Grand Prix.

Additional evidence linked Jaramillo to Cuero and the cocaine operation. A photograph showed Jaramillo at work next to the 1985 Grand Prix. An automobile registration found in Cuero's apartment bore Jaramillo's name. Jaramillo's attache case contained an address book listing Cuero's name. It also contained an application for a mortgage, contract for sale, and closing statement for property at 163–47 24th Avenue in Whitestone, together with an airline ticket for "E. Viana." On November 20, 1985, DEA agents searched the Whitestone address and found Enrique Viana, $174,000 in cash, a triple-beam balance scale, bullets, traces of cocaine and narcotics records, and a piece of paper listing Monina's beeper number 812–1260 next to the name "Mono." Jaramillo admits he was known as "Mono."

The other crucial piece of evidence linking Mono and Monina was a page from an address book with the name "Mono" next to two telephone numbers, 812–1260 and 414–9418, the former number being, of course, the Monina beeper. The address book belonged to William Diaz, owner of the Lincoln Continental Jaramillo was driving when he was shot. Jaramillo argues that the district court erroneously admitted copies of pages from Diaz's address book as a coconspirator's statement, Fed.R.Evid. 801(d)(2)(E), and pursuant to the "catchall" hearsay exception, Fed.R.Evid. 804(b)(5). We disagree.

Until June 23, 1987, statements of coconspirators were admissible in the Second Circuit if sufficient independent evidence established the declarant's participation in the conspiracy. *United States v. Cambindo Valencia*, 609 F.2d 603, 635 n. 24 (2d Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980); *United States v. Geaney*, 417 F.2d 1116 (2d Cir. 1969), *cert. denied*, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970). This requirement was designed to avoid using statements as the foundation for their own ad-

mission. The proponent of the statement needed only to prove the declarant's membership in the conspiracy by a preponderance of the evidence. *United States v. Cicale*, 691 F.2d 95, 103 (2d Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983). At least one of our cases went so far as to say that the independent evidence need show only "a likelihood of an illicit association between the declarant and the defendant." *United States v. Alvarez–Porras*, 643 F.2d 54, 57 (2d Cir.) (quoting *United States v. Ragland*, 375 F.2d 471, 477 (2d Cir.1967), *cert. denied*, 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968)), *cert. denied*, 454 U.S. 839, 102 S.Ct. 146, 70 L.Ed.2d 121 (1981).

 In reviewing the admission of a coconspirator's statement, this court is not limited to the evidence relied on by the trial court, but may take into account all other independent evidence of the declarant's participation in the conspiracy. *See United States v. DeJesus*, 806 F.2d 31, 34 n. 4 (2d Cir.1986), *cert. denied*, ––– U.S. –––, 107 S.Ct. 1299, 94 L.Ed.2d 155 (1987). Here, there was ample evidence of William Diaz's participation in the conspiracy. Diaz registered the 1985 Pontiac. His workplace telephone number was on the purchase agreement for the car. Jaramillo was shot in Diaz's 1986 Lincoln Continental Mark VII. Bills for Monina's beeper were sent to the realty office where Diaz worked. Bills for the telephone in the 1985 Grand Prix were mailed to 24–16 Steinway Street, Astoria, next door to Diaz's sister's travel agency.

In any event, the Supreme Court recently held in *Bourjaily v. United States*, ––– U.S. –––, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), that, under Fed.R.Evid. 104 and 1101(d)(1), the trial court may consider the hearsay statement itself along with independent evidence when assessing the declarant's membership in the conspiracy, *id.* 107 S.Ct. at 2781–82, and can do so without presenting a Confrontation Clause problem. *Id.* 107 S.Ct. at 2782–83. Diaz's address book indicates Mono can be reached at Monina's beeper number. Looking at this statement in conjunction with the other evidence linking Diaz and Jaramillo, the record establishes by a preponderance of the evidence that the declarant, Diaz, was a member of the conspiracy. Because we find that the district court properly admitted the address book as a coconspirator's statement, we do not address its admissibility under the residual hearsay exception.

 Jaramillo also argues that the imposition of consecutive sentences was so disproportionate as to violate the Eighth Amendment prohibition against cruel and unusual punishment. *See Solem v. Helm*, 463 U.S. 277, 290–93, 103 S.Ct. 3001, 3009–11, 77 L.Ed.2d 637 (1983); *United States v. Ortiz*, 742 F.2d 712 (2d Cir.), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 573, 83 L.Ed.2d 513 (1984). The trial court imposed a sentence of twenty-four years for six telephone calls, made two each day, on July 26, July 27, and July 30. Under 21 U.S.C. § 843(b), each telephone call is a separate offense punishable by a sentence of four years' imprisonment. The trial court ordered that the twenty-four year sentence for the telephone calls run consecutively to the fifteen-year term imposed on the conspiracy count.

This case does not contain the "extraordinary set of circumstances" that renders the imposition of consecutive sentences unconstitutional. *See United States v. Golomb*, 811 F.2d 787, 790–91 (2d Cir.1987). Jaramillo was the central figure in this cocaine conspiracy. He was a major supplier of cocaine to wholesale distributors. He has never demonstrated remorse for his actions. Rather, while awaiting trial, Jaramillo bragged to other prisoners that he intended to continue his cocaine operations. We have repeatedly upheld heavy sentences for narcotics offenders. *Id.; Ortiz*, 742 F.2d at 717; *Cunningham v. Henderson*, 725 F.2d 32, 36 (2d Cir.1984). Moreover, under 18 U.S.C. § 4205(a) (1982); 28 C.F.R. § 2.2(a) (1986), Jaramillo is statutorily eligible for parole after serving one-third of his term, or thirteen years, a matter which may be taken into account when assessing the harshness of the penalty. *Ortiz*, 742 F.2d at 715.

Finally, Jaramillo argues that his sentence is much more severe than the sen-

tences imposed upon his codefendants. They, however, pleaded guilty, a fact that Judge Platt could properly consider in sentencing them. *See United States v. Araujo*, 539 F.2d 287, 292 (2d Cir.), *cert. denied*, 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593 (1976). Jaramillo's sentence thus was not so disproportionate as to be cruel and unusual punishment.

Judgment affirmed.