**Dulys SALCEDO, Petitioner,**

v.

**Christopher ARTUZ, Superintendent Green Haven Correctional Facility, Respondent.**

**No. 00 Civ. 0930 SAS.**

United States District Court, S.D. New York.

Aug. 2, 2000.

Dulys Salcedo, Stormville, NY, petitioner pro se.

Sylvia Wertheimer, Assistant District Attorney, New York County District Attorney's Office, New York City, for respondent.

### *OPINION AND ORDER*

SCHEINDLIN, District Judge.

Pro se petitioner Dulys Salcedo seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner raises the following seven claims: (1) the trial court's charge regarding petitioner's right not to testify violated both his right to remain silent and due process; (2) petitioner's conviction arose out of a single continuous

act and requires imposition of concurrent sentences; (3) petitioner's conviction for murder in the second degree was improper where the evidence demonstrated that petitioner acted under extreme emotional disturbance; (4) prosecutorial misconduct deprived petitioner of the right to a fair trial; (5) ineffective assistance of trial counsel; (6) the appellate court should have reduced petitioner's sentence to the minimum and ordered the sentences to run concurrently; and (7) the trial court denied petitioner due process by overlooking petitioner's mental state during jury selection. For the reasons stated below, Salcedo's petition is denied.

## I. Factual Background

On March 8, 1992, Salcedo shot and killed his former girlfriend, Ysidra Rosario, after Rosario ended their seven year relationship. *See* Respondent's Brief at 1–2. Salcedo approached Rosario on the street and asked her if she would speak with him. *Id.* at 2. When Rosario refused, Salcedo took a gun from his car and followed Rosario into a nearby bodega. *Id.* Once inside the bodega, Salcedo again demanded that Rosario speak with him. *Id.* After Rosario refused, Salcedo grabbed her and fired a shot that hit a refrigerator. *Id.* Salcedo then fatally shot Rosario in the stomach. *Id.*

Salcedo was charged with Murder in the Second Degree, Criminal Possession of a Weapon in the Second Degree and Criminal Possession of a Weapon in the Third Degree. *See* Respondent's Brief to Appellate Division, Ex. C to Respondent's Appendix, at 2. Salcedo never denied that he shot Rosario. Instead, he asserted the affirmative defense of extreme emotional disturbance. *See* Respondent's Brief at 2. In support of that defense, Salcedo called psychiatrist Dr. Robert Berger as an expert witness. *See* Petitioner's Brief to Appellate Division, Ex. A to Respondent's Appendix, at 8. The prosecutor countered the psychiatrist's expert testimony with testimony from the bodega owner, Hector

Molina, who had known Salcedo for approximately five years. *Id.* at 4. Molina testified that Salcedo did not appear disturbed on the day he shot Rosario. *See* Respondent's Brief at 16.

On January 13, 1994, a jury convicted Salcedo of all charges. *Id.* at 2. On February 15, 1994, Salcedo was sentenced to a term of twenty years to life for murder, a consecutive term of five to fifteen years for second-degree weapon possession and a concurrent term of two and one-third to seven years for third-degree weapon possession. *Id.* at 1.

Petitioner appealed his conviction to the Appellate Division of the New York Supreme Court, First Department. In a brief filed by counsel, Salcedo challenged the trial court's charge concerning petitioner's decision not to testify, claiming that the charge violated Salcedo's Fifth Amendment right to remain silent and his right to due process. *See* Petitioner's Brief to Appellate Division, Ex. A to Respondent's Appendix. Counsel's brief also challenged the imposition of consecutive sentences, claiming that the convictions arose from a single, continuous act under New York Penal Law § 70.25(2). *Id.*

In addition to counsel's brief, petitioner filed a pro se supplemental brief alleging ineffective assistance of counsel and prosecutorial misconduct, and requesting that the appellate court make the sentences concurrent in the interests of justice. *See* Petitioner's Pro Se Supplemental Brief, Ex. B. to Respondent's Appendix. Petitioner also raised additional claims in a section titled "questions presented". These claims included: (1) a due process violation based on petitioner's inability to understand the jury selection process due to his emotional mental state; (2) a due process violation based on the failure to provide petitioner with a Spanish interpreter at all stages of the trial; and (3) the excessiveness of the sentence given that petitioner was acting under an extreme emotional disturbance and lacked the required criminal intent. *Id.* at 3.

The Appellate Division, First Department, affirmed petitioner's conviction on December 18, 1997. *See People v. Salcedo,* 245 A.D.2d 163, 666 N.Y.S.2d 174 (1st Dep't 1997). The court found that defense counsel failed to preserve his objection to the court's charge regarding petitioner's right not to testify. *Id.* In addition, the appellate court held that the trial court lawfully sentenced Salcedo to consecutive terms of imprisonment because the act of using the revolver to kill Rosario was separate and distinct from possession with the intent to use the same revolver. *Id.* Finally, the appellate court rejected all of the arguments raised in petitioner's supplemental brief as meritless. *Id.*

The New York Court of Appeals granted petitioner's application for leave to appeal. Counsel for Salcedo filed a brief raising the same two claims he had previously raised in the First Department. *See* Petitioner's Brief to Court of Appeals, Ex. F to Respondent's Appendix. Petitioner sought permission to submit a pro se supplemental brief addressing the same claims he had raised below, but the Court of Appeals denied petitioner's request. *See* Respondent's Brief at 3–4. The Court of Appeals affirmed the holding of the First Department, finding the trial court properly sentenced petitioner to consecutive terms of imprisonment. *See People v. Salcedo,* 92 N.Y.2d 1019, 1021, 684 N.Y.S.2d 480, 707 N.E.2d 435 (1998). The court further found that the objection to the jury charge had not been preserved for appellate review. *Id.* at 1022, 684 N.Y.S.2d 480, 707 N.E.2d 435.

## II. Discussion

### A. Exhaustion of State Court Remedies

██ "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional claims by invoking one complete round of the State's established appellate review process." *Id.* at 845, 119 S.Ct. 1728. Thus, in order to obtain federal habeas review, petitioner must have presented to the state court all of the factual and legal arguments set forth in his federal habeas petition. *See Gonzalez v. Sullivan,* 934 F.2d 419, 422 (2d Cir.1991) (petitioner must fairly present federal constitutional claims to state courts to fulfill the exhaustion requirement); *Daye v. Attorney General of N.Y.,* 696 F.2d 186, 191 (2d Cir.1982) (same).

### B. Standard of Review For Claims Adjudicated on the Merits in State Court

Claims that have been adjudicated on the merits in state court proceedings are governed by 28 U.S.C. § 2254(d) which precludes federal habeas relief unless the state-court adjudications "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d) (West Supp.1999). Section 2254(d) applies, for example, where a state court denies an ineffective assistance of counsel claim on a writ of error *coram nobis* and the petitioner then seeks habeas relief on that ground. *See Clark v. Stinson,* 214 F.3d 315, 320 (2d Cir.2000).

Until recently, the applicable standard of review under § 2254(d) was uncertain. *See id.* Then, in *Williams v. Taylor,* ——— U.S. ———, ——————, 120 S.Ct. 1495, 1518–23, 146 L.Ed.2d 389 (2000), the Supreme Court clarified the key phrases "contrary to" and "unreasonable application." With regard to the former, the *Williams* Court held that

a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id.* at 1519. With regard to the latter, the Court held that a

state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts or the particular state prisoner's case.

*Id.* at 1520. The Court emphasized that "unreasonable" is different from "incorrect" or "erroneous" stating: "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 1522.

Thus, following *Williams*, the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in state court is sharply circumscribed. The newly articulated standard prohibits a federal habeas court from substituting its own judgment for that of the state-court judge, requiring a great deal of deference to the state-court judgment. Moreover, the standard set forth in *Williams* abrogates the de novo review that was required under *Brown v.*

*Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).[1]

■ In the instant case, § 2254(d) applies to petitioner's claims for prosecutorial misconduct and ineffective assistance of counsel. These claims—which present questions of law or mixed questions of law and fact rather than pure fact issues— were raised in petitioner's pro se supplemental brief but were found to lack merit. *See Salcedo,* 666 N.Y.S.2d at 174. The fact that these claims were summarily dismissed does not alter my conclusion that they were adjudicated on the merits for purposes of § 2254(d). *See, e.g., Thomas v. Taylor,* 170 F.3d 466, 474 (4th Cir.), *cert. denied,* 527 U.S. 1016, 119 S.Ct. 2361, 144 L.Ed.2d 254 (1999) ("[T]he phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in summary fashion."); *Thomas v. Davis,* 192 F.3d 445, 455 (4th Cir.1999) (§ 2254(d) applies to all claims adjudicated on the merits, i.e., "those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree"); *Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.1997) (perfunctory state-court rulings are nonetheless evaluated pursuant to § 2254(d) for reasonableness).

■ Summary dismissal makes it more difficult, however, to review the state court's application of federal law, thus lessening the practical significance of the new standard. *See Weeks v. Angelone,* 4 F.Supp.2d 497, 522 (E.D.Va.1998) ("In cases where there is no indication of how the state court came to its decision, it will obviously be more difficult for the federal court to judge whether the ultimate deter-

---

1. Prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of questions of law and mixed questions of law and fact was de novo, requiring a federal habeas court to treat the petition as a wholly new complaint. Under *Brown,* state-court adjudications were treated as nothing more than a potentially relevant authority. 344 U.S. at 458, 73 S.Ct. 397. Of

course, pure questions of fact were accorded a statutory presumption of correctness both before and after AEDPA. *See Swain v. Pressley,* 430 U.S. 372, 383, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) ("a state judge's resolution of a factual issue will be presumed to be correct") (citing 28 U.S.C. §§ 2254(d)(2) and (3)). For historical context, in 1996 AEDPA redesignated former subsection (d) as (e).

mination involved an unreasonable application of federal law."), *appeal denied and pet. dismissed,* 176 F.3d 249 (4th Cir.1999). Nonetheless, this added difficulty does not abrogate the standard of heightened deference. A federal habeas court must review the state court ruling to determine whether there is a violation of the United States Constitution. *See Edwards v. Murphy,* 96 F.Supp.2d 31, 42 (D.Mass.2000); *see also Cardwell v. Greene,* 152 F.3d 331, 339(4th Cir.1998) (where the state court decision fails to articulate any rationale for its adverse determination of petitioner's claim, federal habeas court cannot review state court's "application of clearly established Federal law" but must independently ascertain whether the record reveals a constitutional violation). In effect, where a state court summarily dismisses a petitioner's habeas claim, a federal habeas court is forced to engage in a type of de novo review—one which considers the facts of petitioner's case anew but employs the more deferential reasonableness standard described above.

### C. Petitioner's Claims

### 1. Trial Court's Jury Instruction on Petitioner's Right to Remain Silent

As a preliminary matter, because petitioner raised his Fifth and Fourteenth Amendment challenges to the trial court's charge in his state appeals, he fully exhausted his jury instruction claim which is therefore eligible for federal habeas review.

■ According to both petitioner and respondent, the trial judge went beyond merely reading the standard charge regarding a defendant's right not to testify as set forth in the New York Criminal Jury Instructions § 7.05. Petitioner alleges that the trial judge used non-neutral language and repeatedly drew attention to petitioner's decision not to testify. In addition, petitioner contends that the charge suggested to the jury that petitioner's de-

cision was a tactical move, as opposed to a right, violating his right to remain silent and his right to due process.

Both the Appellate Division and the Court of Appeals dismissed this claim based on petitioner's failure to adequately object to the jury instruction. *See Salcedo,* 92 N.Y.S.2d at 1021, 684 N.Y.S.2d 480, 707 N.E.2d 435; *Salcedo,* 666 N.Y.S.2d at 174. As a consequence of the inadequate objection, petitioner failed to preserve the issue for appeal. *See Salcedo,* 666 N.Y.S.2d at 174 (citing *People v. Nuccie,* 57 N.Y.2d 818, 455 N.Y.S.2d 593, 441 N.E.2d 1111 (1982)). The Appellate Division also found that had it reached the merits of this claim, it would have affirmed the trial court because the expansion of the standard charge was minor. *See Salcedo,* 666 N.Y.S.2d at 174 (citing *People v. Santiago,* 194 A.D.2d 428, 599 N.Y.S.2d 959 (1st Dep't 1993)).

■ A claim may be procedurally barred if the state court decision rested on an independent and adequate state law ground. *See Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). This doctrine "applies to bar federal habeas [review] when a state court declined to address a prisoner's federal claim because the prisoner had failed to meet a state procedural requirement." *Id.* at 729–30, 111 S.Ct. 2546. In this case, the New York State courts based their decisions on the contemporaneous objection rule which bars appellate review of any issue not objected to at trial. *See People v. Nuccie,* 57 N.Y.2d at 818, 455 N.Y.S.2d 593, 441 N.E.2d 1111. This procedural bar is an independent and adequate ground for the state courts' dismissals of petitioner's jury instruction claim. Accordingly, I am barred from addressing the merits of this claim.

### 2. Single Continuous Act Doctrine and the Excessive Sentence Claims

■ Although petitioner argued to the state courts that his conviction arose

out of a single continuous act, he failed to fairly present the federal constitutional nature of his claim to either the Appellate Division or the Court of Appeals. The briefs presented to the state courts cite only New York Penal Law § 70.25(2) which states: "When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single continuous act ... the sentences ... must run concurrently." However, a claim challenging consecutive sentences fails to present a question of constitutional dimension if the sentence imposed is within the range prescribed by state law. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992). Both the Appellate Division and the Court of Appeals held that petitioner's consecutive sentences were proper given the distinction between possessing a gun with the intent to force the victim to leave and shooting a victim after she refused to do so. *See Salcedo*, 92 N.Y.2d at 1021–22, 684 N.Y.S.2d 480, 707 N.E.2d 435; *Salcedo*, 666 N.Y.S.2d at 174 (citing *People v. Brown*, 80 N.Y.2d 361, 590 N.Y.S.2d 422, 604 N.E.2d 1353 (1992)). Thus, both courts examined the state law governing consecutive sentences and found that petitioner's sentence fell within the permitted range as the murder and weapons convictions involved separate and distinct crimes.

Although petitioner's claim is not subject to habeas review in its present form, it could be reviewed if construed as a claim of cruel and unusual punishment in violation of the Eighth Amendment.[2] Petitioner is arguably alleging an excessive punishment in light of mitigating factors such as his first offender status, excellent work record and high probability of rehabilitation.

As a general matter, courts must give deference to the length of sentence deemed appropriate by the legislature. *See Rummel v. Estelle*, 445 U.S. 263, 271–74, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (finding legislature's interest of preventing recidivism is valid and justifies a life sentence). A court may refuse to exercise deference only in extreme circumstances such as where the punishment is barbaric or vastly disproportionate to the crime committed. *See Clark v. Bennet*, 98 Civ. 1445, 1999 WL 360205, at *7 (E.D.N.Y. May 28, 1999) (citing *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), which found sentence of life without possibility of parole disproportionate to crime of uttering a "no account" check for $100).

This principle applies with equal force to an evaluation of the constitutionality of consecutive sentences. The Second Circuit has stated that an "[E]ighth [A]mendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence.'" *Id.* (quoting *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir.1988)). Again, the imposition of consecutive sentences violates the Eighth Amendment only under extraordinary circumstances. *See id.* (citing *United States v. Jaramillo–Montoya*, 834 F.2d 276, 279 (2d Cir.1987) which found the imposition of consecutive sentences for conspiracy to distribute cocaine and six counts of using a telephone to facilitate the distribution of cocaine constitutional).[3]

In the instant case, petitioner was solely responsible for the unlawful use of the gun against Rosario, as well as for her death. In addition, petitioner demon-

---

**2.** As petitioner is pro se, this Court must hold his petition to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**3.** In *Jaramillo–Montoya*, the court referred to a variety of factors to determine whether the consecutive sentences rise to the level of extraordinary circumstances, including the degree of a defendant's involvement in the crime, defendant's demonstration of remorse, the heavy sentence supported by the state law, and the defendant's eligibility for parole. *See* 834 F.2d at 277–79.

strates no remorse for his actions. Finally, the sentences are both within the limits established by the legislature. In fact, the difference between a fifteen-year and a twenty-year to life sentence is not great once petitioner's eligibility for parole is considered. As to the consecutive nature of the sentences, the state courts properly distinguished between petitioner's intent to use the weapon unlawfully to force Rosario to leave with him and the intent to shoot Rosario and cause her death. Hence, the imposition of consecutive sentences does not constitute extraordinary circumstances because the legislature permits consecutive sentences for separate acts.

 With respect to petitioner's further claim that his sentences are improper due to mitigating circumstances, the Supreme Court has held that a "required mitigation" claim has no support other than in death penalty jurisprudence. *Harmelin v. Michigan*, 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (plurality) (finding no need to analyze mitigating factors in an individualized manner even in life sentence). In light of this limitation, the failure to consider mitigating factors concerning petitioner's individual case does not violate the Eighth Amendment. Accordingly, petitioner's second and sixth grounds for habeas relief are dismissed.

### 3. Extreme Emotional Disturbance

 In his third claim, petitioner alleges that because he acted under an extreme emotional disturbance, his conviction was not supported by the evidence in violation of "U.S. Const. Amend. XIV". Petition at 6. However, petitioner failed to use this language in his pro se supplemental briefs to the state courts. Indeed, petitioner never mentioned a federal constitutional claim stemming from extreme emotional disturbance in his supplemental briefs. Rather, he characterized the question presented as follows: "Whether the sentence herein was excessive where the crime was in fact committed under the influence of extreme emotional disturbance, the appellant was a first offender and had a long history of psychological problems and didn't have the intent to commit the crime." *See* Petitioner's Pro Se Supplemental Brief, Ex. B to Respondent's Appendix, at 3.

 The failure to fully articulate and support a federal constitutional claim does not automatically preclude exhaustion. The Second Circuit has stated: "Although we have indicated that 'we think it would be better practice for counsel when relying on a broad constitutional doctrine like the Fourteenth Amendment to support the claim with a factual premise and by citation to federal cases' a minimal reference to the Fourteenth Amendment satisfies the exhaustion requirement." *Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (quoting *Gonzalez v. Sullivan*, 934 F.2d 419, 423 (2d Cir.1991)). Thus, petitioner need not cite to the book and verse of the Constitution in order to fairly present the legal basis of the habeas claim. *See Daye*, 696 F.2d at 192 (citing *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). Merely mentioning a constitutional amendment in a point heading fairly presents the constitutional claim to state courts. *See Reid*, 961 F.2d at 376. In addition, under *Daye*, an issue may be fairly presented where there is:

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194.

 Applying these principles here, petitioner has failed to present—in any way—his extreme emotional disturbance claim to the state courts. The supplemen-

tal briefs include no discussion of the extreme emotional disturbance issue other than the single sentence quoted above. There is no reference to the Fourteenth Amendment. Nor is there reference to federal or state case law applying federal constitutional analysis. As a consequence of petitioner's failure to reference the Fourteenth Amendment or to fall within any of the *Daye* exceptions, his extreme emotional disturbance claim is barred from federal habeas review.[4]

### 4. Prosecutorial Misconduct

Petitioner also alleges prosecutorial misconduct based upon the following purported actions by the prosecutor: (1) attacking the integrity of the defense psychiatrist while unfairly bolstering the credibility of the prosecution's witnesses; (2) referring to testimony that was never given; (3) calling defense counsel's summation "garbage"; and (4) alluding to a financial dispute and documents during summation that were not in evidence. Because petitioner raised this issue before the state courts in his pro se supplemental brief, he has satisfied the exhaustion requirement with regard to this issue.

■■■ The standard of habeas review applicable to claims of prosecutorial misconduct is harmless error. *See Bentley v. Scully*, 41 F.3d 818, 823 (2d Cir.1994) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). This standard permits habeas relief only if the prosecutor's error had a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Bentley*, 41 F.3d at 823 (quoting *Brecht*, 507 U.S. at 622–23, 113 S.Ct. 1710). "In order to reach

the level of a constitutional violation, a prosecutor's remarks must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.' " *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir.1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Thus, petitioner must demonstrate that he suffered actual prejudice from the prosecutor's remarks or actions.

■■■ A court must evaluate the following factors to determine whether a petitioner has shown actual prejudice: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent prejudicial conduct." *Bentley*, 41 F.3d at 824. Petitioner has failed to demonstrate actual prejudice here. *First*, the prosecutor's attack on the defense expert simply allowed the jury to assess credibility, which is the proper function of a jury. The prosecutor did not assert his personal opinion as to the credibility of the witnesses. Rather, he summarized the testimony of both the defense and prosecution witnesses and argued that the prosecution witness was more credible. *See* 1/13/94 Tr. at 63.[5]

*Second*, petitioner's claim that there was no evidence supporting the prosecutor's statement that a witness knew petitioner for five years is simply wrong. The witness, Hector Molina, clearly stated that he had known petitioner for five years and that he had seen petitioner every day in his bodega. *See* 1/10/94 Tr. at 364.

■■■ *Third*, although the prosecutor's description of defense counsel's summation

4. Finally, the allegation does not present a fact pattern falling within the parameters of typical constitutional claims. The extreme emotional disturbance defense is purely a matter of state law. Furthermore, the jury decides whether a particular defendant suffered from extreme emotional disturbance. Under 28 U.S.C. § 2254(e), state court fact findings are entitled to a presumption of correctness. Such a presumption exists where

the resolution of the issue "depends heavily on the trial court's appraisal of witness credibility and demeanor." *Thompson v. Keohane*, 516 U.S. 99, 111, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).

5. All references to petitioner's state court trial transcript pair the date with the abbreviation "Tr".

as "garbage" was inappropriate, the trial court immediately sustained an objection and instructed the prosecutor to refrain from using such caustic language. *See* 1/13/94 Tr. at 33. Given the swift response of the trial judge, as well as the brevity of the prosecutor's comment, petitioner suffered no actual prejudice from the isolated remark.

*Fourth,* the jury was given a lengthy instruction regarding the prosecutor's reference to a financial dispute between petitioner and his victim. *See id.* at 55–57. Because no evidence was introduced to support the prosecutor's contention that a financial dispute existed, the judge instructed the jury that they could only consider a hypothetical question posed to the defense expert regarding a possible financial dispute and not consider the financial dispute as a potential motive for the shooting. *See id.* Thus, the jury was properly instructed as to what evidence it could consider.

*Fifth,* the evidence against petitioner was overwhelming. Petitioner did not deny that he threatened and shot the victim. His only defense was that he acted under extreme emotional disturbance. Because the jury could reasonably conclude that petitioner did not act under extreme emotional disturbance, *see supra* note 3, petitioner has failed to demonstrate actual prejudice resulting from the prosecutor's improper remarks. Accordingly, because the state court judgment dismissing this claim on appeal was not an unreasonable application of federal law, this claim is denied.

## 5. Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective by failing to call petitioner's family and friends to support the extreme emotional disturbance defense and by failing to fully investigate the prosecution witnesses. Under the standard established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984), petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness and that petitioner suffered prejudice from counsel's deficiency.

A strong presumption exists that counsel's conduct "falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. This presumption recognizes that counsel makes strategic choices during a trial. Courts are not permitted, "with the benefit of hindsight, to engage in speculation about how the case might best have been tried." *Hess v. Mazurkiewicz,* 135 F.3d 905, 908 (3d Cir.1998). Even "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052.

Petitioner argues that his trial counsel's failure to call family members and friends as additional witnesses fell below the reasonableness standard. In *Maddox v. Lord,* 818 F.2d 1058 (2d Cir. 1987), the Second Circuit found trial counsel's failure to interview a psychiatrist, in support of an extreme emotional disturbance defense, to be unreasonable conduct. In contrast, Salcedo's trial counsel called a psychiatric expert witness to support his extreme emotional disturbance defense. Counsel's decision not to call additional witnesses satisfies the reasonableness standard. *See Strickland,* 466 U.S. at 699, 104 S.Ct. 2052.

Petitioner next argues that trial counsel failed to fully investigate the prosecution's witnesses, as evidenced by his failure to use documents during cross-examination. In *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987), the Second Circuit held that "decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." Courts are reluctant to find unreasonable conduct in defense

counsel's cross-examination strategy absent grave error falling below the required professional standard. Petitioner does not even identify specific documents that would have improved the cross-examination. Without any evidence of relevant documents or what other evidence further investigation would have uncovered, petitioner has failed to demonstrate that his attorney performed below the professional standard.

Petitioner has also failed to demonstrate actual prejudice. To do so, petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Given the overwhelming evidence of petitioner's guilt, he has failed to make this showing. Accordingly, because the state court judgment denying petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law, this claim is dismissed.

### 6. Jury Selection

Petitioner properly exhausted his claim that he was denied due process as a result of his incompetent mental state during the voir dire stage of his trial. Thus, the issue is properly before this Court. A defendant's right to be present at trial includes defendant's presence "at critical steps in the criminal proceedings against him 'including the impaneling of the jury.'" *United States v. Hernandez*, 873 F.2d 516, 518 (2d Cir.1989) (quoting *United States v. Gordon*, 829 F.2d 119, 123 (D.C.Cir.1987)). While petitioner was present during jury selection, he claims that he lacked the competence to understand the proceedings. New York characterizes an incompetent defendant as one who "as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense." N.Y. CPL § 730.10(1). The standard for assessing a defendant's competency under New York law is similar to that used in federal law: "'[W]hether the [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceeding against him.'" *Johnson v. Keane*, 974 F.Supp. 225, 230 (S.D.N.Y.1997) (quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

The trial court has a duty to hold a hearing to evaluate a defendant's competence even where the defendant has not requested a hearing. *See id.* (citing *Silverstein v. Henderson*, 706 F.2d 361 (2d Cir.1983)). Thus, in circumstances where a trial court has reason to believe that a defendant is unable to understand the proceedings, the court must order a hearing. *See id.* Courts should consider several factors in determining whether a hearing is necessary including "any evidence of the defendant's irrational behavior, the defendant's demeanor at trial, medical opinions, and the opinion of defense counsel." *Id.* at 231.

Here, the trial judge, who knew petitioner was taking anti-depressant medication, asked petitioner whether he was "clear-headed" at the commencement of voir dire. *See* 1/3/94 Tr. at 2. Petitioner responded that he felt all right. *See id.* at 3. The following day, at the request of defense counsel, the court terminated the voir dire prematurely when petitioner acted in an agitated manner in front of potential jurors. *See id.* at 138. When proceedings resumed, the judge inquired whether petitioner had received his medication and whether petitioner was in a better state of mind. *See id.* at 163. In addition, the judge stated that there was no indication that petitioner was unable to understand or participate in jury selection. *See id.* at 165. Indeed, when asked whether petitioner was "alert, comprehensive, and able to proceed intelligently, knowingly and willingly and able to participate in the selection of the jury", defense counsel replied that he was. *Id.* This record demon-

strates that the trial court acted properly in proceeding with jury selection because there was no indication that petitioner was incompetent.

■ Petitioner asserts that the trial court denied him due process when it failed to ask petitioner directly whether he was able to understand the proceedings. However, a state court's determination of competency to stand trial falls in the category of rulings entitled to a presumption of correctness on habeas review. *See* 28 U.S.C. § 2254(e); *Thompson v. Keohane,* 516 U.S. at 111, 116 S.Ct. 457. For a petitioner to overcome this presumption, he must prove by "clear and convincing evidence" that the record does not support the trial court's finding. 28 U.S.C. § 2254(e); *see also Senna v. Patrissi,* 5 F.3d 18, 20 (2d Cir.1993). Petitioner fails to demonstrate any evidence to support his claim. The mere fact that the trial court inquired of defense counsel rather than petitioner is not enough to satisfy petitioner's burden of proof. To the contrary, the record shows that the trial court made appropriate inquiries of defense counsel and employed its own observations to determine petitioner's competency, as *Johnson* requires. In light of petitioner's failure to demonstrate by clear and convincing evidence that the trial court's findings were erroneous, those findings are presumed to be correct. Consequently, petitioner fails to establish a due process violation that merits habeas relief.

## III. Conclusion

For the forgoing reasons, petitioner's motion for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing that he was denied a constitutional right, a certificate of appealability will not issue from this Court. *See* 28 U.S.C. § 2253(c)(2); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000) (holding that substantial showing exists where (i) the issues involved in the case are debatable among jurists of reason or (ii) a court could resolve the issues in a different manner or (iii) the questions are adequate to deserve encouragement to proceed further); *Clark v. Garvin,* 99 Civ. 9075, 2000 WL 890272, at *6 (S.D.N.Y. June 30, 2000). The Clerk of Court is instructed to close this case.

SO ORDERED.