Marshall SCHRETER, Petitioner,

v.

Christopher ARTUZ, Superintendent, Green Haven Correctional Facility and Elliot Spitzer, Attorney General, State of New York, Respondent.

No. 99–CV–5809 (ADS).

United States District Court, E.D. New York.

Sept. 24, 2002.

Marshall Schreter, Green Haven Correctional Facility, Stormville, NY, Petitioner, pro se.

Thomas J. Spota, District Attorney of Suffolk County, By: Guy Arcidiacono, Asst. District Attorney, Riverhead, NY, for Respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Marshall Schreter ("Schreter") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, Schreter's petition is denied.

In early April 1992, the Suffolk County Police Department conducted an investigation of Michael Varone's ("Varone") activities. The Police obtained authority to monitor Varone's home, cellular and car telephones. During the time period from April 14, 1992, until June 2, 1992, the police tracked the negotiation, planning and implementation of a conspiracy involving drug sales through forty-six phone conversations between Schreter, Varone and others. The following events highlight the activities leading to Schreter's arrest. On April 14, 1992, at approximately 10:09 a.m., Varone spoke with Schreter from his car phone. Schreter offered to split a kilo of cocaine with Varone, which had a selling price of $24,000. Varone indicated that he had another offer to purchase a kilo of cocaine, but Schreter had offered him a better quality cocaine. Varone asked Schreter if he should take the better quality cocaine that Schreter offered. Schreter told Varone that there was a cocaine shortage for the past three weeks. Eventually, Varone obtained a kilo of cocaine from another supplier.

On May 1, 1992, at about 9:10 a.m., Schreter told Varone that he still did not have a way to get him cocaine. Schreter told him that until the recent drought, the cocaine business was extremely profitable. In fact, Schreter quit his job at the Western Steak House because of the previously high cocaine profits. Varone told Schreter that their relationship was better than Varone's relationship with other suppliers.

On May 4, 1992, at 12:05 p.m., Schreter spoke with Varone and informed him that he could obtain a kilo of cocaine for $33,000.00 or $34,000.00. Secreter indicated that he had previously done business with the supplier and that the cocaine would be of good quality. Varone offered $31,000.00 for the kilo, but Schreter refused to come down on the price range. Varone asked Schreter to call back when he knew the exact price.

On May 6, 1992, at 10:46 a.m., Schreter told Varone that he already obtained the kilo of cocaine and offered to sell half of it to him for $17,000.00. Varone accepted, and Schreter agreed to take $12,000.00 up front, with the remaining $5,000.00 to be paid the following Monday. Three minutes later, at 10:49 a.m., one of Varone's customers agreed to buy three ounces. An hour later, Varone and Schreter met at the Holiday Inn on Sunnyside Boulevard in Long Island. Varone purchased the half kilo of cocaine at that time.

On May 19, 1992, Varone and Schreter sought to arrange another cocaine sale, this time for a whole kilo of cocaine. Varone received the money for the sale from Joseph Fiametta ("Fiametta"), a customer of Varone's who agreed to split the kilo with him. The following night, Varone and Schreter again met at the Holiday Inn at Sunnyside Boulevard. Varone gave Schreter money in exchange for a kilo of cocaine.

During the next two weeks, Varone and Schreter discussed future deals over the phone and in person. Varone owed money to Schreter and he also wanted to purchase more cocaine. On May 26, 1992, around 11:30 a.m., Varone met with Schreter at a Holiday Inn in Melville, Long Island. According to Varone, he gave Schreter money and discussed future deals to buy cocaine. A police surveillance team witnesses their meeting.

On June 1, 1992, at 7:30 p.m., Schreter met with Varone at a Radisson Hotel in Melville. At their meeting, Varone purchased 250 grams of cocaine from Schreter.

On June 2, 1992, Varone, Fiametta, and Schreter all spoke on the phone to arrange another drug sale. Varone wanted a half kilo of cocaine from Schreter and they negotiated the price. They again agreed to meet at the Radisson in Melville. At approximately 4:00 p.m. that day, Detective Frank Morro observed Schreter's 1992 Buick Roadmaster enter the Radisson parking lot. Schreter got out of the car and retrieved a dark colored gym bag from the trunk of his car. At 4:16 p.m., Varone pulled up to the Radisson. Varone called Schreter and asked to meet him at a nearby restaurant. There, Varone told Schreter that he had to pass on the cocaine deal because he felt he was being set up.

Schreter returned to the Radisson fifteen or twenty minutes later. He parked his car, got out and went to his trunk carrying the same dark colored gym bag. Acting pursuant to a warrant, several detectives pulled in behind Schreter's car and arrested him. One detective searched his bag and discovered a narcotics package (later confirmed as at least eight ounces of cocaine), two tin type packets containing a white powder (later confirmed as cocaine) and a Charter Arms two inch .38 special revolver.

On May 3rd and 4th, 1993, the New York State Supreme Court, Suffolk County, held a pre-trial suppression hearing. Schreter moved to suppress all evidence, including the cocaine and firearm, seized from him during his arrest. On May 19, 1993, the court denied Schreter's application, finding that: (1) the police legally arrested Schreter; (2) the search was proper as incidental to a lawful arrest; and

(3) the police had probable cause to believe that Schreter's car contained contraband or weapons and therefore were legally permitted to conduct a warrantless search of the car and containers therein. Order of Supreme Court, Suffolk County (Leis, J.), 5/19/93, at 2–3.

After a jury trial in the summer of 1993, a jury convicted Schreter of Criminal Possession of a Controlled Substance in the First Degree (N.Y. Penal Law § 220.21), Conspiracy in the Second Degree (N.Y. Penal Law § 105.15), and Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02). On September 27, 1993, Schreter was sentenced to concurrent indeterminate prison terms of: (1) twenty-five years to life for the drug possession charge; (2) twelve and one-half to twenty-five years for the conspiracy charge; and (3) three and one-half to seven years for the weapons charge.

Schreter directly appealed his conviction to the New York Supreme Court, Appellate Division, Second Department ("Second Department"), alleging that: (1) the trial court improperly refused to suppress the gun and drug evidence; (2) the prosecution failed to prove the conspiracy charge beyond a reasonable doubt; (3) the trial court gave an erroneous jury instruction for the conspiracy charge; (4) the trial court erred in admitting expert testimony about decoding drug language; (5) his sentence was harsh and excessive; (6) trial counsel provided ineffective assistance; and (7) the prosecution failed to prove his guilt beyond a reasonable doubt on all charges.

Schreter also filed a *pro se* supplemental brief to the Second Department, alleging that: (1) the trial court improperly excused a juror from the panel in the presence of other jurors; (2) the trial court improperly refused to dismiss a juror who allegedly concealed material information; (3) the prosecutor misled jurors about the sentence that a key witness received in exchange for testimony; and (4) the trial court improperly qualified an expert witness.

On July 20, 1998, the Second Department affirmed Schreter's conviction, finding that: (1) the evidence sufficiently established his guilt beyond a reasonable doubt; (2) Schreter received meaningful representation from trial counsel; (3) that his sentence was not excessive; and (4) his remaining contentions were unpreserved or without merit. *People v. Schreter,* 252 A.D.2d 563, 675 N.Y.S.2d 891 (2d Dept. 1998). On October 29, 1998, the New York State Court of Appeals denied Schreter leave to appeal. *People v. Schreter,* 92 N.Y.2d 951, 681 N.Y.S.2d 482, 704 N.E.2d 235 (1998).

On September 20, 1999, the Petitioner filed a petition for writ of habeas corpus, alleging that: (1) a juror's failure to disclose his prospective employment with the Housing Authority Police violated his due process rights; (2) his right to a fair trial was denied when the trial court excused a juror in the presence of the remaining jury panel; (3) the prosecution misled the court and jury about the sentence the key witness was to receive in exchange for his testimony; (4) the prosecution failed to prove that he was guilty of Conspiracy beyond a reasonable doubt; (5) he was denied effective assistance of trial counsel by counsel's errors during pre-trial hearings, jury selection, and trial; and (6) his sentence was harsh and excessive.

### DISCUSSION

Schreter filed this action after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, AEDPA's provisions apply to his case. *Williams v. Taylor,* 529 U.S. 420, 429, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

Under the provisions of Section 2254(d), a habeas corpus application must be denied unless the state court's adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2).

A decision is "contrary to" established Federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." *Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.*

### A. As to the alleged juror bias

Schreter claims that during *voir dire*, Juror No. 9 intentionally concealed the fact that he applied to become a New York City Housing Authority Police Officer. Neither defense counsel nor the prosecutor asked whether any of the jurors were applying to become police officers, but only inquired whether any of the juror's family or friends were police officers. Juror No. 9 was selected for the jury, and during the trial indicated to the court that he had a scheduling conflict because he had to attend a psychological interview as part of his police application. Defense counsel challenged Juror No. 9 for cause, and argued that if he had known about the juror's application to the Housing Authority

Police, he would have peremptorily challenged him. The trial court denied the challenge, finding that no basis existed to remove the juror. The court stated that Juror No. 9 did not conceal information, but that counsel failed to discover it. T.R. at 964.

█ In order to obtain a new trial based on alleged juror bias not disclosed during *voir dire*, a petitioner must demonstrate: (1) "that a juror failed to answer honestly a material question on *voir dire*"; and (2) "that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984).

█ Schreter failed to meet either part of the necessary test. First, neither counsel nor the court asked whether any juror was applying to be a law enforcement officer. The question was never posed; thus Juror No. 9 did not give a dishonest answer.

Further, Schreter has not shown that Juror No. 9's response would have supported a challenge for cause. The trial court found that Juror No. 9's application to the housing police would not have provided a sufficient basis to challenge the juror for cause: "the fact that he has an application to be a housing police officer does not mean that he's going to lean toward the police. That does not follow." T.R. at 966. The trial court's decision does not amount to a clear violation of federal law. *See United States v. Shaoul*, 41 F.3d 811, 816 (2d Cir.1994). Thus, Schreter has not proven the two-part test necessary to obtain a new trial based on an allegedly untrue answer in *voir dire*. *See United States v. Langford*, 990 F.2d 65, 69–70 (2d Cir.1993). Accordingly, this claim is denied.

## B. Alleged state law violations

Schreter argues that the trial court erred in dismissing a juror for cause in the presence of the remaining jury panel. The juror in question stated that he would form an adverse inference from Schreter's failure to testify. In front of the remaining jury panel, defense counsel challenged that juror for cause. The trial court granted the challenge and then instructed remaining panel that Schreter has no obligation to testify, and that they may not hold his silence against him. Schreter claims that he felt compelled to testify in violation of his Fifth Amendment right because of the trial court's ruling.

██ Federal habeas corpus relief is not available for state law errors that do not rise to the level of federal constitutional violations. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *see Smith v. Phillips*, 455 U.S. 209, 211, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (holding that non-constitutional claims are not cognizable in federal habeas proceedings). "Juror discharge and voir dire proceedings are governed by state law." *McCrary v. Artuz*, No. CV 95–622, 1995 WL 728423, at *3 (E.D.N.Y. Nov.28, 1995) (citing N.Y.Crim. Proc. Law § 270.35, 270.15(3)). Unless Schreter demonstrated that a state law error occurred, and such error rose to the level of federal constitutional violation, he is not entitled to habeas corpus relief. 28 U.S.C. § 2254(a).

██ Schreter has not demonstrated that the trial court's dismissal of the juror constitutes state court error. Under New York law, counsel may request to argue a challenge for cause outside of the presence of the other prospective jurors. N.Y.Crim. Proc. Law § 270.15(2). Defense counsel made no such request. Defense counsel challenged the juror with the remaining jury panel present. T.R. at 738. Thus, the trial court did not err by granting Schreter's challenge in front of the remaining jury panel.

██ Even if the trial court's ruling constituted error, which the Court does not find, Schreter has failed to show that the alleged violation rose to the level of federal constitutional error. *McCrary*, 1995 WL 728423, at *4. Accordingly, this claim is denied.

## C. As to the alleged prosecutorial misconduct

Schreter claims that the prosecution misled the jury and the court about the sentence that its key witness, Michael Varone, would receive in exchange for his testimony. Schreter asserts that Varone actually received a probation sentence, but the prosecutor indicated that Varone would serve ten years in prison. This alleged misconduct, Schreter claims, denied the jury an opportunity to fairly assess Varone's credibility and in turn, denied him a fair trial.

██ The standard for reviewing a habeas corpus claim of prosecutorial misconduct is " 'the narrow one of due process, and not the broad exercise of supervisory power.' " *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Habeas corpus relief is available only where the prosecutor's remarks so infected the trial with unfairness that the resulting conviction is a denial of due process. *Salcedo v. Artuz*, 107 F.Supp.2d 405, 416 (S.D.N.Y.2000). A federal court must distinguish between " 'ordinary trial error of a prosecutor and that sort of egregious misconduct ... amounting to a denial of constitutional due process.' " *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.1990) (quoting *Donnelly*, 416 U.S. at 647–48, 94 S.Ct. 1868). In order to show a constitutional violation, the peti-

tioner must demonstrate that he suffered actual prejudice from the prosecutor's remarks. *Salcedo*, 107 F.Supp.2d at 416.

■ Schreter's contention that alleged prosecutorial misconduct denied him a fair trial is without merit. The record clearly shows that the prosecutor disclosed the cooperation agreement between Varone and the District Attorney's office from the outset of the trial. T.R. at 152–57, 552–53, 719–20. The prosecutor stated that Varone may receive a ten year prison term, however, that sentence may be reduced if Varone cooperated in other unrelated pending cases. *Id.* The prosecutor disclosed the possible range that Varone faced and also informed the jury that this range was subject to change. Schreter has failed to come forward with evidence that suggests that any other agreement existed between the District Attorney's office and Varone. Thus, the prosecutor did not mislead the jury about Varone's cooperation agreement. *See Palmer v. Senkowski*, No. 99 CIV. 9634, 2002 WL 54608, at *7–8 (S.D.N.Y. Jan.15, 2002).

Further, Schreter has not demonstrated that he suffered prejudice as a result of the prosecutor's conduct. The prosecutor's statements about Varone's cooperation agreement did not render Schreter's trial fundamentally unfair. *See Brown v. Keane*, No. 97 Civ. 3302, 1999 WL 446022 (S.D.N.Y. June 28, 1999). Accordingly, this claim is denied.

### D. As to the alleged insufficient evidence

Schreter claims that the prosecution failed to prove beyond a reasonable doubt that he was involved in a conspiracy or that he was aware of Varone's participation in a conspiracy.

■ A petitioner who challenges the sufficiency of the evidence supporting his conviction bears a "very heavy burden." *Jones v. Duncan*, 162 F.Supp.2d 204, 214

(S.D.N.Y.2001). To obtain habeas corpus relief, the Court must find that, when viewing the evidence most favorably to the prosecution, no rational trier of fact could find guilt beyond a reasonable doubt. *Farrington v. Senkowski*, 214 F.3d 237, 240–41 (2d Cir.2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■ In addition, the Court must defer to the jury's determination of the weight given to conflicting evidence, witness credibility, and inferences drawn from the evidence. *Thomas v. Scully*, 854 F.Supp. 944, 954 (E.D.N.Y.1994). A guilty verdict may not be disturbed if the jury has resolved these issues in a reasonable manner. *See id.* The Court's "inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993) (emphasis in original). Further, the jury may base its verdict entirely on circumstantial evidence. *United States v. Russo*, 74 F.3d 1383, 1395 (2d Cir.1996).

■ Applying the above standard, the Court finds that the evidence sufficiently supports Schreter's conspiracy conviction. Under New York law, "[a] person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct." N.Y. Penal Law § 105.15. Schreter and Varone discussed and transacted, on numerous occasions, the sale of cocaine in quantities large enough to constitute class A felonies. *See* N.Y. Penal Law § 220.21. The prosecution presented transcripts of tapes, along with testimony from detectives and Varone, a participant in the conspiracy, that detailed Schreter's

conversations and overt acts. Based on this evidence, a jury could reasonably conclude that Schreter's participated in a conspiracy as defined by the statute. *See United States v. Flaharty*, 295 F.3d 182, 200–01 (2d Cir.2002). Accordingly, this claim is denied.

### E. As to the ineffective assistance of counsel claim

Schreter alleges that his counsel provided ineffective assistance during his pretrial hearing, jury selection and at trial.

In order to prevail on an ineffective assistance of counsel claim, a petitioner must first show that his counsel performed deficiently and that the deficiency caused actual prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. 2052, and establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. However, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically noted that the federal district courts need not address both components if a petitioner fails to establish either one. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

#### (i) As to the pre-trial hearing

Schreter contends that trial counsel ineffectively represented him at the pre-trial hearing because he failed to obtain and review "the eavesdropping tapes." Petition, 9/02/99, at 26. Schreter has submitted no proof that counsel did, in fact, fail to review these materials prior to the hearing. However, even if counsel failed to acquire this information before the pre-trial hearing, Schreter has not demonstrated that he suffered prejudice as a result. *See Mackenzie v. Portuondo*, 208 F.Supp.2d 302, 319–21 (E.D.N.Y.2002). Accordingly, this claim is denied.

#### (ii) As to jury selection

Schreter argues that counsel questioned prospective jurors ineffectively and inadequately during voir dire. The record belies Schreter's contentions. Counsel thoroughly questioned each prospective juror and exercised challenges where appropriate. T.R. at 176–81, 339–350, 553–56. Further, Schreter again has not demonstrated that but for counsel's performance during jury selection, the trial outcome would have been different. In light of the substantial evidence presented against Schreter, it is highly unlikely that any alleged deficiency in counsel's performance during jury selection contributed to his guilty verdict. Accordingly, this claim is denied.

#### (iii) As to the trial

Schreter asserts that during trial, counsel failed to raise proper objections to limit the testimony of Detective Morro, and was ineffective with regard to the objections that he did raise throughout trial. A review of counsel's overall performance throughout trial indicates that his performance was not ineffective. Contrary to Schreter's allegations, counsel successfully objected on numerous occasions

throughout trial, including limitations on videotape evidence and Detective Morro's testimony. Further, Schreter again has failed to demonstrated that counsel's performance was so deficient that he was deprived of a fair trial. Accordingly, this claim is denied.

### F. As to the alleged harsh and excessive sentence

Schreter argues that his sentence was harsh and excessive because the court did not consider his heath, which he claims is "extremely poor." He further contends that the court should have considered that he was fifty-eight years old at the time of his sentencing, because he will be over eighty years old by the time of his release.

■ It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992). "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *Id.; see Gonzalez v. Travis,* 172 F.Supp.2d 448, 457 (S.D.N.Y.2001) (finding excessive sentence claim not cognizable for habeas review where sentence was within statutory range); *Herrera v. Artuz,* 171 F.Supp.2d 146, 151 (S.D.N.Y. 2001) (holding the trial court's imposition of consecutive sentences was appropriate and did not provide ground for habeas relief); *McCalvin v. Senkowski,* 160 F.Supp.2d 586, 589 ("Sentencing decisions are not cognizable on *habeas* review unless the sentence imposed falls outside the range prescribed by state law."); *Thomas v. Senkowski,* 968 F.Supp. 953, 956–57 (E.D.N.Y.1997) (dismissing excessive sentence claim where the petitioner's sentence fell within the range prescribed by state law).

■ Upon his conviction for Criminal Possession of a Controlled Substance in the First Degree, Conspiracy in the Second Degree, and Criminal Possession of a Weapon in the Third Degree, the court sentenced Schreter to concurrent indeterminate prison terms of: (1) twenty-five years to life for the drug possession charge; (2) twelve and one-half to twenty-five years for the conspiracy charge; and (3) three and one-half to seven years for the weapons charge. Schreter's sentence falls within the range prescribed by state law. N.Y. Penal Law § 70.00(2), (3)(a), 70.25(2–a). Thus, his claim is not cognizable for federal habeas corpus review. Accordingly, this claim is dismissed.

### CONCLUSION

For the foregoing reasons, Schreter's petition for a writ of habeas corpus is DENIED. Pursuant to Fed. R. Spp. Pro. 22(b) and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as Petitioner has not made a substantial showing of a denial of a constitutional right. *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090; *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**