16-3473-cr
*United States v. Canfield*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**R**ULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. **C**ITATION TO A SUMMARY ORDER FILED ON OR AFTER **J**ANUARY **1, 2007,** IS PERMITTED AND IS GOVERNED BY **F**EDERAL **R**ULE OF **A**PPELLATE **P**ROCEDURE **32.1** AND THIS COURT'S **L**OCAL **R**ULE **32.1.1.** **W**HEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE **F**EDERAL **A**PPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). **A** PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand eighteen.

PRESENT: DENNY CHIN,
　　　　　　RAYMOND J. LOHIER, JR.,
　　　　　　　　　*Circuit Judges,*
　　　　　　JOHN F. KEENAN,
　　　　　　　　　*District Judge.*\*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
　　　　　　　　　*Appellee,*

　　　　　　v.　　　　　　　　　　　　　　16-3473-cr

RYAN CANFIELD,
　　　　　　　　　*Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:　　　　　　RAJIT S. DOSANJH, Assistant United States
　　　　　　　　　　　　　　Attorney (Wayne A. Myers, Assistant United

---

\*　　Judge John F. Keenan, of the United States District Court for the Southern District of New York, sitting by designation.

States Attorney, *on the brief*), *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, New York.

FOR DEFENDANT-APPELLANT:      SUSAN C. WOLFE, Law Office of Susan C. Wolfe, New York, New York.

Appeal from the United States District Court for the Northern District of New York (Hurd, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-appellant Ryan Canfield appeals from a judgment entered October 6, 2016, after a jury trial, convicting him of one count of conspiracy to distribute and possess with intent to distribute methylone, in violation of 21 U.S.C. § 846, and eight counts of use of a communication facility to facilitate commission of a controlled substance felony, in violation of 21 U.S.C. § 843(b).  He was sentenced principally to 144 months' imprisonment.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

On appeal, Canfield argues: (1) the trial evidence was insufficient to show that any coconspirator knew that methylone was a controlled substance; (2) the trial evidence was insufficient to show that the text messages charged in Counts 2 through 9 (the "phone counts") were used to facilitate a drug offense; (3) venue was not proper in the Northern District of New York (the "NDNY") for the phone counts and the trial

court erred in failing to charge the jury on venue; (4) the communications facility statute is unconstitutionally vague and the phone counts were multiplicitous; (5) the government committed misconduct in summation; (6) Canfield's Fourth Amendment rights were violated by the search and seizure of his automobile and laptops; and (7) his sentence was procedurally unreasonable. We address each issue in turn.

## DISCUSSION

### 1. Sufficiency of Evidence of Knowledge that Methylone Was a Controlled Substance

Canfield argues that the evidence was insufficient to prove that any of his coconspirators knew that methylone was a controlled substance. In particular, he contends that at the time of the charged conspiracy, methylone was not illegal under New York law and it was not added to the federal controlled substance schedules until October 21, 2011. *See* 21 U.S.C. § 811(h)(2); 21 C.F.R. § 1308.11; Schedules of Controlled Substances: Temporary Placement of Three Synthetic Cathinones Into Schedule I, 76 Fed. Reg. 65,371 (Oct. 21, 2011) (to be codified at 21 C.F.R. pt. 1308). We review a claim of insufficiency of the evidence *de novo*. *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004).[1]

---

[1] The government contends that plain error review applies to this argument as well as others because Canfield failed to raise the precise issues below. We assume, without deciding, that Canfield preserved for review the issues he raises now on appeal.

The Controlled Substance Act makes it unlawful for a person "knowingly" to, *inter alia*, distribute or possess with intent to distribute "a controlled substance." 21 U.S.C. § 841(a)(1). In *McFadden v. United States*, the Supreme Court made clear that the knowledge requirement is met when the government shows that (1) "the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was," or (2) "the defendant knew the identity of the substance he possessed." ---U.S.---, 135 S. Ct. 2298, 2304 (2015); *see also United States v. Demott*, 906 F.3d 231, 240-44 (2d Cir. 2018).

Canfield's sufficiency challenge fails, for the government presented direct and circumstantial evidence that his coconspirators, including M.D., Dan Conti, and John Chin, knew they were trafficking in methylone and that methylone was a controlled substance. For example, M.D., a cooperator, testified that she and Conti purchased methylone from Canfield, in December 2011, to resell. M.D. marketed the methylone to her customers as ecstasy, referring to it as MDMA or "Molly." She engaged in additional methylone transactions with Canfield in 2012, prior to her cooperation in August 2012. The government also presented evidence that Canfield and Chin exchanged emails in October 2011 about the impending "ban" on methylone, and that they exchanged further emails in January 2013, after the ban was imposed, discussing Chin's sale of additional methylone to Canfield.

There was also evidence that M.D., Conti, and Canfield engaged in convoluted arrangements to receive methylone and used code words in their communications, showing that they knew it was a controlled substance. *See, e.g.,* *McFadden*, 135 S. Ct. at 2304 n.1 (noting that defendant's "concealment of his activities" and "evasive behavior with respect to law enforcement" was circumstantial evidence of knowledge the substance was controlled); *United States v. Agueci*, 310 F.2d 817, 828-29 (2d Cir. 1962) (holding district court properly charged jury that, *inter alia*, "code words" constituted circumstantial evidence that material in question was narcotics).

Accordingly, Canfield's sufficiency challenge to his conviction on Count 1 fails.

## 2. Sufficiency of Evidence as to the Phone Counts

Canfield contends that the government failed to prove that the eight text messages charged in the phone counts were sent to facilitate a federal drug trafficking felony in violation of 21 U.S.C. § 843(b).[2] In particular, he argues that the texts were between Canfield and M.D., and that because M.D. was cooperating with the

---

[2] Section 843(b) makes it a crime for any person to "knowingly or intentionally . . . use any communication facility" to facilitate a controlled substance crime. 21 U.S.C. § 843(b). It provides that "[e]ach separate use of a communication facility shall be a separate offense under this subsection." *Id*. It defines a "communication facility" to include "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication." *Id*.

government, the text messages were not in furtherance of the conspiracy. We are not persuaded, for we agree with the government that even though M.D. was a government informant at the time the text messages were exchanged, a reasonable jury could have found that the text messages facilitated Canfield's ongoing methylone trafficking with others, including Conti, Chin, and an individual using the email address beginning "bish0p9."

The evidence established that Canfield was using the text messages to set up a meeting with M.D. (in Connecticut) on January 3, 2013, in part so that she could pay him money she owed him for a lost shipment of methylone and to sell her additional methylone. Indeed, at the meeting Canfield gave her a beer can containing methylone. Even assuming that Canfield could not have conspired with M.D. that day because she was acting at the behest of the government, the text messages facilitated his ongoing dealings with other coconspirators as the meeting provided him with an opportunity to sell additional methylone, which he obtained from his suppliers, and money to purchase yet more methylone. *See United States v. Miranda-Ortiz*, 926 F.2d 172, 175 (2d Cir. 1991) ("Since the essence of any conspiracy is agreement, rather than the success of the venture, a defendant may be convicted of conspiracy even if the intended substantive crime could not occur because the person he and his coconspirators thought would participate in it was actually an agent of the government.") (citations omitted); *see also United States v. Valencia*, 226 F. Supp. 2d 503,

- 6 -

511-12 (S.D.N.Y. 2002) (convicting defendant of narcotics conspiracy where he sold drugs to government cooperator, where evidence established that defendant conspired with others, including suppliers), *aff'd*, 100 F. App'x 17 (2d Cir. 2004). Even assuming Canfield could not conspire with M.D. on January 3, 2013, the meeting was still in furtherance of his ongoing narcotics trafficking with others.

**3.      Venue**

Canfield raises two issues relating to venue with respect to the phone counts: he argues that, first, venue did not lie in the NDNY; and, second, the trial court erred in failing to give a venue instruction to the jury. Both arguments fail.

First, venue was proper in the NDNY. Venue need be proven by only a preponderance of the evidence, *United States v. Rommy*, 506 F.3d 108, 119 (2d Cir. 2007), and "a telephone call placed by a government actor within a district to a conspirator outside the district can establish venue within the district provided the conspirator uses the call to further the conspiracy," *id*. at 122; *see also United States v. Kirk Tang Yuk*, 885 F.3d 57, 71 (2d Cir. 2018) ("A telephone call placed by someone within the Southern District of New York -- even a person acting at the government's direction -- to a co-conspirator outside the Southern District can render venue proper as to the out-of-district co-conspirator so long as that co-conspirator 'uses the call to further the conspiracy.'") (quoting *Rommy*, 506 F.3d at 122). Here, M.D. was in the NDNY when

she exchanged the texts with Canfield, and Canfield knew that she lived in the Albany area, which is in the NDNY.

Second, Canfield waived his claim that the district court erred in not charging venue. He did not propose a venue instruction in his requests to charge. Although he did raise the issue at the close of the government's case, he did not object, after the district court completed its charge, to the absence of a jury instruction on venue. In any event, venue is not an element of the crime, *Kirk Tang Yuk*, 885 F.3d at 71, and any error in not charging the jury on venue would be harmless, *see Rommy*, 506 F.3d at 123-24 & n.10 (finding harmless error in district court's failure to instruct jury as to foreseeability of venue in the Southern District of New York, and observing that "harmless error analysis can be applied to a possible charging omission with respect to venue, which is not an element of the crime and requires only proof by a preponderance of the evidence").

4.      **The Communication Facility Statute**

Next, Canfield argues that the communication facility statute is unconstitutionally vague as applied to text messages and, relatedly, that the phone counts fail because they are multiplicitous. He argues that the statute is vague because it does not define "use" of a communication device, and notes that text messaging did not exist when the statute was enacted. He also contends that the eight phone counts

- 8 -

charge a single offense multiple times, as the various messages purportedly are part of one continuing conversation.

The Due Process Clause "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). Ordinary people would surely understand that § 843(b) prohibits the use of a cellular telephone to send or receive text messages to further narcotics trafficking. Numerous federal criminal statutes employ the word "use" without defining it, *see, e.g.*, 18 U.S.C. § 924(c), and where a statute does not define the term "use," we "supply it with its ordinary meaning," *United States v. Desposito*, 704 F.3d 221, 226-27 (2d Cir. 2013) ("The verb 'use' means 'to put into action or service,' 'to avail oneself of,' or 'to carry out a purpose or action by means of.'" (quoting Merriam-Webster's Collegiate Dictionary 1378 (11th ed. 2004))). The statute also defines "communication facility" to include a "telephone," and it encompasses "the transmission of writing, signs, signals, pictures, or sounds of all kinds." 21 U.S.C. § 843(b); s*ee United States v. Rodgers*, 755 F.2d 533, 544 (7th Cir. 1985) ("Section 843(b) is no more, and possibly less, vague than other broadly-phrased federal criminal statutes that we have consistently upheld over vagueness and overbreadth challenges.").

The multiplicitousness argument presents a somewhat closer call, as some counts charge what appear to be different parts of the same conversation (Counts 2 and 3, Counts 4 and 5) and one count is based on a one-word text (Count 3: "Ok."). But we are not persuaded. The statute explicitly provides that "[e]ach separate use of a communication facility shall be a separate offense," 21 U.S.C. § 843(b), and the government charged here each transmission -- whether it was one word (Count 3) or thirty-two words (Count 8) -- as a "use" of a telephone and a separate count, with the exception that certain transmissions that occurred at the same time were included in one count (Counts 6 and 7). Indeed, except for the transmissions combined into Counts 6 and 7, the transmissions occurred minutes if not hours apart. We have upheld charges of separate counts under § 843(b) for each telephone call made or placed by a defendant, *see, e.g.*, *United States v. Jaramillo-Montoya*, 834 F.2d 276, 279 (2d Cir. 1987) ("Under 21 U.S.C. § 843(b), each telephone call is a separate offense punishable by a sentence of four years' imprisonment."), and courts have held that "nondescript conversation" and even "hanging up after a busy signal" can be communications facilitating a drug transaction, *United States v. Roberts*, 14 F.3d 502, 519 (10th Cir. 1993).

### 5.    Prosecutorial Misconduct

Canfield argues that the government engaged in prosecutorial misconduct by referencing his incarceration and commenting on the credibility of M.D. in closing arguments.  The arguments are rejected.

The reference to Canfield's incarceration was clearly inadvertent, as the prosecutor simply referred in rebuttal summation to Canfield's "letter from 2014 when he was in jail."  App'x 115.  Defense counsel did not object, and at the conclusion of the argument, the prosecutor himself brought the matter to the attention of the district court, saying: "I regret it and I didn't realize it until after the fact, I mentioned, I believe, that the letter sent by the defendant was, I think the words I used were, while he was in jail."  App'x 116.  Defense counsel declined a limiting instruction.  The single, inadvertent remark did not so substantially prejudice Canfield as to deny him a fair trial.  *See United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005); *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999).

Nor did the prosecutor's comments on M.D.'s credibility cross the line.  Obviously, M.D. was a critical witness, and both sides addressed her credibility at various points in the trial.  *See United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) ("Prosecutors have greater leeway in commenting on the credibility of their witnesses when the defense has attacked that credibility.").  The prosecutor's comments, if they were improper at all, did not rise to the level of "flagrant abuse," *United States v.*

*Germosen*, 139 F.3d 120, 128 (2d Cir. 1998), nor did they cause Canfield "substantial prejudice," *Carr*, 424 F.3d at 227.

**6.     The Automobile and Laptop Searches**

Canfield raises several issues related to the seizure and search of his automobile, when he was arrested by Drug Enforcement Administration ("DEA") agents on April 11, 2013, and the subsequent seizure and search of two laptops found in the car.  After Canfield moved to suppress, the district court held an evidentiary hearing and issued a written decision on July 23, 2014, denying the motion.  We review the district court's legal conclusions *de novo* and its findings of fact for clear error. *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015).

On the day of his arrest, Canfield had traveled alone in a Connecticut-registered car to a motel in Latham, New York.  After he was arrested, the car was sitting in the motel parking lot.  Canfield was not registered as a guest and had not sought permission to leave the car in the motel parking lot.  In the circumstances of this case, it was appropriate for the agents to seize the vehicle for safekeeping.  *See South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) (law enforcement officials may seize and impound vehicles of arrested individuals, without a warrant, "[i]n the interests of public safety and as part of . . . 'community caretaking functions'" (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973))); *United States v. Lopez*, 547 F.3d 364, 366-67, 372

- 12 -

(2d Cir. 2008) (arrest of both occupants of car "called for the impoundment" of car, which was parked on city street).

Once the vehicle was taken into custody, the agents were permitted to "search the vehicle and make an inventory of its contents without need for a search warrant and without regard to whether there is probable cause." *Lopez*, 547 F.3d at 369-70. As the district court found, the inventory search here complied with DEA written policy. *See United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994) (law enforcement agents must act in accordance with "standardized" procedures in conducting inventory searches).

As for the laptops found in the car, the DEA agents obtained a warrant to perform a forensic analysis of them. We discern no error in the district court's findings or conclusions with respect to the search of the laptops.

**7.     Sentencing Issues**

Finally, Canfield raises two claims of procedural error in his sentence:  he contends that, first, the record does not establish that the district court knew it had authority to vary from the applicable 500:1 ratio for marijuana equivalency; and, second, the district court failed to resolve the issue of drug quantity.

We review a sentence for procedural reasonableness under a "deferential abuse-of-discretion standard." *United States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)).  A sentence is procedurally

unreasonable if the district court "fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [18 U.S.C.] § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (internal quotation marks omitted).

As for the first claim of procedural error, there is nothing in the record to suggest that the experienced district judge failed to understand that he had discretion to reject the 500:1 ratio based on policy grounds. It has been well established since 2007 that district judges may reject a drug ratio in a guidelines calculation based on a policy disagreement. *See Kimbrough v. United States*, 552 U.S. 85, 109-10 (2007); *see also Spears v. United States*, 555 U.S. 261, 265 (2009) ("A sentencing judge who is given the power to reject the disparity created by the crack-to-powder ratio must also possess the power to apply a different ratio which, in his judgment, corrects the disparity."). We have held that "we are 'entitled to assume that the sentencing judge understood all the available sentencing options, including whatever departure authority existed in the circumstances of the case,'" unless the district court's sentencing remarks "create ambiguity as to whether the judge correctly understood an available [sentencing] option." *United States v. Sanchez*, 517 F.3d 651, 665 (2d Cir. 2008) (citations omitted and alternation in the original). No ambiguity exists here, where the parties argued the issue and both sides cited cases recognizing that district courts have authority to

- 14 -

depart based on disagreements with the applicability of equivalency ratios. *See United States v. Kamper*, 748 F.3d 728, 740-41 (6th Cir. 2014). Significantly, in the end, Canfield was sentenced to 144 months' imprisonment, which was substantially below the recommended 360-744 months guidelines range.

As for the second claim of procedural error, the district court expressly adopted the factual findings of the presentence report as well as its guidelines calculations. Hence, the district court adopted the Probation Office's finding that Canfield was responsible for 13.4596 kilograms of methylone. *See Thompson*, 76 F.3d at 456 (district court's adoption of presentence report at sentencing satisfies requirement to make factual findings). There was no procedural error.

* * * * *

We have considered Canfield's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk